UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| COSTA HOLLYWOOD PROPERTY OWNER, LLC[1] | Case No. 19-22483-AJC |
| Debtor. _____ / | |
| COSTA HOLLYWOOD PROPERTY OWNER, LLC, | Adv. No. |
| Plaintiff, | |
| v. | |
| GREENBERG TRAURIG, P.A., a Florida professional association, & STEWART TITLE GUARANTY COMPANY, a Texas corporation, | |
| Defendants. _____ / | |

**COMPLAINT FOR TURNOVER**

Plaintiff, Costa Hollywood Property Owner, LLC ("*Plaintiff*"), sues Greenberg Traurig, P.A. ("*GT*") and Stewart Title Guaranty Company ("*Stewart*" and together with GT, the "*Defendants*") and states:

**JURISDICTION & VENUE**

1. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b).

2. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7001.

3. This is a core proceeding for which the Court is authorized to determine all matters in accordance with 28 U.S.C. § 157(b)(2)(A), (E) and (O).

---

[1] The Debtor's current mailing address is 777 North Ocean Drive, Hollywood, FL 33019. The Debtor's EIN is 47-4883778.

4. All conditions precedent to bringing the causes of action asserted herein have been performed, have occurred or have been waived.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

6. Plaintiff is the debtor-in-possession in the above-captioned Chapter 11 bankruptcy case.

7. Defendant GT is a Florida professional association with a principal place of business at 333 S.E. 2nd Avenue, 44th Floor, Miami, Florida 33131.

8. Defendant Stewart is a Texas corporation with a principal place of business at 1980 Post Oak Boulevard, Suite 800, Houston, Texas 77056 and which is authorized to and is conducting business in Broward County, Florida.

9. In filing this Complaint, Plaintiff does not intend to, and should not be deemed to, waive or release any and all other claims that Plaintiff may hold against Defendants.

## FACTUAL BACKGROUND

10. On September 19, 2019 (the "*Petition Date*"), Plaintiff filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code bearing Case No. 19-22483-AJC (the "*Main Bankruptcy*").

11. Plaintiff is a Delaware limited liability company authorized to do business in Florida. Plaintiff developed a condominium hotel project commonly known as "Costa Hollywood Beach Resort" located at 777 North Ocean Drive, in Hollywood, Florida (the "*Condo-Hotel*"). The Condo-Hotel contains 307 residential units, 15 commercial units, and 1 shared facilities unit and related improvements. Plaintiff: (i) owns 43 of the residential units, 9 of the commercial units and the shared facilities unit; (ii) controls the condominium association and shares common

operating expenses with the condominium association; and (iii) has established a rental management program pursuant to which Plaintiff acts as the rental agent for "Third Party Controlled Units" that are under contract for the "Rental Management Program" from time to time, and for the owner controlled units. All units within the Rental Management Program are operated as hotel rooms in the Costa Hollywood Beach Resort.

12.     Plaintiff is managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

13.     Prior to the Petition Date, Plaintiff and Stewart entered into two indemnity agreements ("**Indemnity Agreements**") pursuant to which funds were escrowed from sale proceeds of unit sales to address so-called "identified risks" to Stewart and the law firm GT. Specifically, the Indemnity Agreements relate to 2 lawsuits: one involving Design Engineering Group (the "**Design Indemnity Agreement**") and the other involving Costa Investors LLC (the "**Costa Investors Indemnity Agreement**"). A copy of the Design Indemnity Agreement is attached as **Exhibit A**, and a copy of the Costa Investors Indemnity Agreement is attached as **Exhibit B**.

14.     Pursuant to the Indemnity Agreements a total of $1,425,139.55 was escrowed (the "**Escrowed Funds**") with GT prepetition. GT continues to hold these funds to this day.

15.     Paragraph 4(G) of each Indemnity Agreement provides that the Escrowed Funds will be released to Plaintiff upon dismissal with prejudice (or the expiration of any applicable appellate period) of Case Nos. CACE-16-005451 (the "**Design Engineering Case**") and CACE-18-011130 (the "**Costa Investors Case**"), both filed in the Seventeenth Judicial Circuit in and for Broward County, Florida.

16.     The Design Engineering Case is stayed as a result of Plaintiff's bankruptcy filing herein, and no appeals have been taken in that case. As of the Petition Date, Plaintiff had not filed

any answer to the complaint, thus the pleadings in the Design Engineering Case remained open and the case remains in its infancy.

17.     Design Engineering Group lacks any recourse against Plaintiff to justify Defendants' continued refusal to release the portion of the Escrowed Funds attributable to the Design Engineering Case to Plaintiff. Plaintiff listed and disclosed Design Engineering Group as both a secured and unsecured creditor with a disputed debt in Plaintiff's bankruptcy schedules (*see* ECF No. 235-1 in the Main Bankruptcy). Design Engineering Group has not filed any proof of claim in the bankruptcy case, and upon the sale of Plaintiff's property pursuant to the Chapter 11 Plan of Liquidation (the "***Plan***") [ECF No. 247 in the Main Bankruptcy], Plaintiff will dissolve and cease to further exist. To the extent Design Engineering Group is treated under the Plan, it will be paid in accordance therewith and its purported construction lien against the Debtor's property will be extinguished.

18.     Even if Design Engineering had a valid claim (and it does not), in all circumstances its interest is subordinate to the senior secured lender, 777 N. Ocean Drive LLC, by virtue of a Subordination Agreement, dated July 1, 2016, and recorded in the Official Records of Broward County, Florida on July 20, 2016 under Instrument No. 113820795. There are no claims asserted in the Design Engineering Case against either Stewart or GT relating to the Escrowed Funds.

19.     Accordingly, there is no legitimate basis for Defendants to refuse to turn over that portion of the Escrowed Funds attributable to the Design Engineering Case to Plaintiff.

20.     The claims against Plaintiff raised in the Costa Investors Case have been dismissed with prejudice, and the dismissal of those claims was affirmed on appeal. Therefore there are no pending claims against Plaintiff in the Costa Investors Case. To be clear, the Costa Investors Case is a case filed by Plaintiff against Costa Investors LLC, among others, and the only claims filed

against Plaintiff were by way of counterclaims filed by Costa Investors LLC for fraud and conspiracy to defraud, negligent misrepresentation, unjust enrichment, equitable lien, and indemnity (the "*Counterclaim*"). On October 17, 2018, an order was entered in the Costa Investors Case dismissing all of the counts in the Counterclaim alleged against Plaintiff *with prejudice* (the "*Dismissal Order*"). On November 11, 2018, Costa Investors appealed the Dismissal Order. On July 18, the Fourth District Court of Appeal affirmed the Dismissal Order without written opinion, and on August 9, 2019, filed its mandate with the Broward County Clerk of Courts (the "*Appeal Mandate*").

21. Accordingly, there are absolutely no claims pending or subject to further appeal against Plaintiff in the Costa Investors Case.

22. In December 2019, Plaintiff demanded that GT and Stewart turnover the Escrowed Funds. To date, GT and Stewart have failed and refused to comply with Plaintiff's turnover demand.

23. While Defendants have been on notice of the Main Bankruptcy for months, neither has filed any proof of claim relating to the Indemnity Agreements or the Escrowed Funds.

## COUNT I
### Declaratory Judgment – 28 U.S.C. § 2201, Fla. Stat. Ch. 86

24. Plaintiff adopts and realleges Paragraphs 1 through 23.

25. There is a bona fide, actual, present, and practical need for a declaratory judgment because the facts demonstrate that all conditions precedent to the release of the Escrowed Funds have occurred, and that such funds belong and should be released to Plaintiff. Defendants dispute that all necessary conditions precedent have occurred and dispute that the Escrowed Funds belong and should be released to Plaintiff.

26. The request for a declaratory judgment deals with a present, ascertained or ascertainable state of facts, or a present controversy as to the facts described herein.

27. The relief sought herein is not the mere giving of legal advice by the courts or the answer to questions propounded from curiosity. As described above, an actual controversy exists as to Plaintiff's right to release of the Escrowed Funds.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment (i) declaring Plaintiff's entitlement to the Escrowed Funds; (ii) for damages; (iii) allowable pre-judgment and post-judgment interest; (iv) attorneys' fees and costs; and (v) such further relief as the Court deems just and appropriate.

## COUNT II
### Turnover – 11 U.S.C. § 542

28. Plaintiff adopts and realleges Paragraphs 1 through 23.

29. Plaintiff has an interest in the Escrowed Funds and such interest is property of the estate.

30. Defendants are currently in possession of the Escrowed Funds to which Plaintiff is entitled under the Indemnity Agreements.

31. Plaintiff has a clear right to the turnover of the Escrowed Funds.

32. Defendants have refused to turnover the Escrowed Funds to Plaintiff, and Plaintiff is entitled to possession under Section 542 of the Bankruptcy Code.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Plaintiff demands judgment against Defendants for (i) turnover of the Escrowed Funds and (ii) such further relief as the Court deems just and appropriate.

Dated: April 10, 2020.

          /s/ James C. Moon
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandrussin.com
Meaghan E. Murphy, Esquire
Florida Bar No. 102770
mmurphy@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Plaintiff*

בס״ד

## STG Indemnity Agreement: Identified Risk

**STG Indemnity Agreement: Identified Risk**

File, Commitment, GF, or Policy Number: Master Commitment, Costa Hollywood Project, 777 N. Ocean Drive, Unit __, Hollywood, FL 33019

(referred to herein as the "File")

This indemnification (hereafter "Indemnification" or "Agreement" or "Indemnity Agreement") is made and given by the undersigned, Moses Bensusan, individually, and on behalf of: Costa Hollywood Property Owner LLC referred to herein as "Indemnitor" (whether one or more) for the benefit of Stewart Title Guaranty Company and Greenberg Traurig, P.A. (individually and collectively referred to hereafter as "Title Company").

1. A. The Title Company has issued or will issue a commitment, binder or preliminary report with respect to the Land described per unit resold by Indemnitor as described in the recorded Declaration of Condominium as Instrument No. ___ in the Public Records of Broward County, FL (referred to hereafter as "Land").

An exception has been or will be made to the following matter: [describe]

Partial Release of property under Schedule "A" herein from that certain Amended Claim of Lien in favor of Design Engineering Group LLC against Costa Hollywood Property Owner LLC in Official Records Instrument 114350276, Of the Public Records of Broward County, Florida.

Partial release of subject property from that certain Notice of Lis Pendens pending in the Circuit Court of Broward County, Case No. CACE-16-005451(03), on a complaint filed to foreclose Claim of Lien in favor of Design Engineering Group, LLC. Notice of Lis Pendens filed 03/31/2016, recorded in Official Records Instrument 113601862, and Notice of Lis Pendens recorded in Official Records Instrument 114507872, all of the Public Records of Broward County, Florida.

_____

(hereafter said matter, or any claim of said matter, or any action to enforce said matter, referred to as "Identified Risk").

B. Indemnitor has requested the issuance by Title Company from time to time before, on, or after the effective date of this Agreement, of a policy or policies of title insurance, endorsements, commitments, binders, preliminary reports, guarantees and indemnities ("Title Insurance Policy" or "Title Insurance Policies") covering all or part of the Land as to transactions, past, present and future, and insuring against loss which may be sustained by reason of the Identified Risk, claims due to the Identified Risk, or actions to enforce the Identified Risk, without showing (or insuring against) the Identified Risk as an exception to title, or insuring against loss by reason of any claim of priority of the Identified Risk over insured mortgages, deeds of trust or other insured interests, and/or insuring

Exhibit A

בס"ד

against liens arising from the Identified Risk, by endorsement or otherwise, including but not limited to legal fees and expenses (such insurance "Identified Risk Coverage"). Indemnitor understands and agrees that the Title Company may make disclosure of said claims, liens and actions to all proposed insureds.

2. To induce the Title Company to issue any Title Insurance Policy providing Identified Risk Coverage, Indemnitor shall hold harmless, protect, defend and indemnify the Title Company from and against any and all claims, costs, liabilities, losses, damages, expenses and charges (whether or not the Title Company has suffered actual loss), including, but not limited to, attorney's fees and expenses of litigation, and attorney's fees and expenses to enforce this Agreement, for which the Title Company may in its sole discretion become liable or sustain, arising out of or any way connected with any Title Insurance Policy providing Identified Risk Coverage. Any determination of coverage by the Title Company shall be conclusive evidence that the matter is within the Title Policy coverage as to the Identified Risk for the purposes of this Agreement.

3. Indemnitor understands and agrees that the Title Company's issuance of any Title Insurance Policy providing Identified Risk Coverage may make it necessary or appropriate for the Title Company, in its sole discretion and without notice to Indemnitor, to issue additional or other Title Insurance Policies providing Identified Risk Coverage covering all or part of the Land from time to time. Therefore, it is understood and agreed that the obligations of the Indemnitor hereunder shall not be limited to the Title Insurance Policy providing Identified Risk Coverage initially issued on the Land, but shall also apply to any Title Insurance Policies subsequently issued on the Land, or portions thereof. It is specifically understood by the Indemnitor that the Title Company will be relying upon this Agreement as a continuing guarantee of the performance of Indemnitor's obligations with respect to the Land in issuing any such further Title Insurance Policies providing Identified Risk Coverage. Indemnitor understands and agrees that the Indemnitor's obligations to the Title Company shall be enforceable in connection with the current or any future policies, whether or not the Title Company identifies the existence of the Identified Risk prior to issuance of any Title Insurance Policy providing Identified Risk Coverage.

4.A. In the event a hearing is scheduled to obtain a final judgment of foreclosure, indemnitor shall at least 10 days prior to the date of hearing:

(i) Cause a release of the Identified Risk to be filed in the appropriate official records office; or

(ii) Cause to be recorded with respect to the Identified Risk a bond or bonds conforming to applicable state statutes and sufficient to release the Land from the Identified Risk; or

(iii) Take such action as shall be required by the Title Company, in its sole discretion.

B. Should Indemnitor fail to comply with subparagraphs (i), (ii) or (iii) as set forth above, the Title Company is authorized by Indemnitor, but is not obligated, to advance and pay such amounts as the Title Company shall, in its sole discretion, determine to be appropriate to procure release of such Identified Risk. Without notice or demand, the Title Company may take any action it deems appropriate for its protection or the protection of any of its insureds. Indemnitor agrees upon demand to reimburse the Title Company for all amounts advanced or expended, together with the maximum rate of interest allowable by law.

בס"ד

C. To the extent that the Title Company shall expend any sum of money on account of this Agreement, the Title Company shall also have the right of subrogation against the Indemnitor including but not limited to Indemnitor's rights in the Land. As an additional remedy, the Title Company shall have the right to a lien on the interest, if any, of Indemnitor in the Land for any sum of money paid or expended by the Title Company on account of this Agreement. This lien shall be subordinate in priority only to those liens of record in the county or parish where the Land is located at the time the Title Company records its statement of lien. The Title Company shall have the right to bid on the Land at a foreclosure sale and to acquire, hold, lease, mortgage and convey the same. A suit to recover a money judgment on any sums of money paid or expended by the Title Company on account of this Agreement shall be maintainable without foreclosing or waiving the lien securing the same.

D. To the extent permitted by law, Indemnitor hereby subordinates any lien, claim, right or privilege that Indemnitor or those claiming by, through, or under Indemnitor, may have in the Land now or in the future for labor, equipment, material or services furnished or to be furnished for the benefit of the Land, to any mortgage, deed of trust, or other encumbrance of any insured under any title insurance policy issued by the Title Company, now or in the future.

E. As each unit is closed and a title policy issued to secure the Indemnitor's obligation with respect to the Identified Risk, Indemnitor hereby agrees to deposit with the title company the sum of 150% of ___ that units potential liability for the lien based on each units % interest for the shared costs. See attached Exhibit 6 as to each unit's share to be escrowed per Column H.

F. Should Indemnitor fail or refuse to pay the Title Company any sums due to the Title Company hereunder after receiving demand the Title Company shall be entitled to reimburse itself from the Fund in an amount equal to any such sums, plus attorney's fees and expenses incurred in connection therewith to enforce this Agreement.

G. Upon dismissal of Case No. CACE-16-005451(3) with prejudice any sums held by the Company will be release to Costa Hollywood Property Owner LLC.

5. It is specifically understood and agreed by Indemnitor that once such title insurance obligations have been undertaken by the Title Company, no cancellation by Indemnitor can be effective.

6. Indemnitor understands that, as a continuing guarantee, as well as a direct indemnification, Indemnitor authorizes the Title Company without notice or demand, and without affecting the Indemnitor's liability hereunder, from time to time: (a) to renew, compromise, extend, accelerate or otherwise change the time or terms of payment of any obligation which shall be so guaranteed hereunder; (b) to take security for the payment of this Agreement and to exchange, enforce, waive and release any such security; (c) to apply such security and direct the order or manner of sale thereof as the Title Company may in its discretion determine; and (d) release or substitute any one or more of the Indemnitors (if more than one). In addition, Indemnitor waives any right to require the Title Company (a) to proceed against any person; (b) to proceed against or exhaust any security held by the Title Company or (c) to pursue any other remedy whatsoever. Indemnitor also waives all presentments, demands for performance, notices of non-performance, and notice of acceptance of this guarantee and indemnity. Indemnitor also waives any and all claims, counterclaims or defenses against the Title Company for recovery by the Title Company under this Agreement based upon any action or inaction of the Title Company or anyone else under this Agreement, the Title Policies or any other agreement between Indemnitor and the Title Company.

בס"ד

7. Indemnitor hereby agrees that the Title Company shall have and is granted the right, at any reasonable time, to examine the books, accounts, and records of Indemnitor, pertaining to such works or improvements.

8. In the event any provision of this Agreement shall be held invalid or unenforceable by any court having jurisdiction, such provision shall be deemed severable and shall not affect the validity of any other provisions or the balance hereof.

9. The failure of the Title Company from time to time to demand the performance of any act which it might require of Indemnitor hereunder or any other indemnitor shall not be construed as a waiver of the right to enforce such performance at a later time upon appropriate demand.

10. In the event of suit regarding any of the terms of this Agreement or performance or non-performance thereof, the parties agree that venue shall be in the appropriate courts in the county, parish, or state where the Land is located. The laws of the State of the site of the Land shall govern any suit. By signature hereto Indemnitor appoints the Clerk of said Court as the Indemnitor's agent to receive service of process and, further consents to jurisdiction of said Court over the Indemnitor.

11. Indemnitor understands and agrees that the Title Company is not obligated to issue any title insurance at any time, although requested to do so by Indemnitor, and may exercise its own discretion as to the issuance of any title insurance now or in the future. However, once the Title Company has issued title insurance, Indemnitor agrees that the issuance of title insurance will be in specific reliance upon this indemnification and guarantee given by the Indemnitor, and Indemnitor shall be obligated whether or not Indemnitor has specifically requested the issuance of title insurance.

12. All written notices permitted or required to be given under this Agreement may be delivered (by UPS, Federal Express or other similar means) to each of the parties thereto, or mailed to each party by Registered United States Mail or Certified United States Mail, and shall be considered duly made when addressed as follows:

To Title Company:

Stewart Title Guaranty Company
P.O. Box 2029
Houston, Texas 77252
Attention: Stewart Legal Services

with copy to:

Stewart Title Guaranty Company

1980 Post Oak Boulevard, Suite 710
Houston, Texas 77056
Attention: Stewart Legal Services

בס"ד

To Indemnitor(s):

_____

_____

_____

_____

Either party may, by written notice to the other, as aforesaid, change the address to which notices are to be sent.

13. A. The parties acknowledge that the Title Company may be asked to provide title insurance pursuant to this Agreement wherein legal title to the Land and improvements may be vested in a corporation, partnership, joint venture or other form of ownership other than individuals. It is the intention of the parties hereof that any person signing this Agreement individually and not in a representative capacity shall be unconditionally and personally bound by the terms hereof with full personal recourse against such individual.

B. Where any one or more of Indemnitors are corporations, partnerships, limited liability companies or joint ventures, the officer signing on behalf of such entity personally represents and warrants that he/she has been duly authorized by such entity to execute this Agreement on behalf of such entity.

C. The obligations hereunder are joint and several and unconditional and shall continue whether or not the undersigned has any interest in the entity which presently owns the Land or in the Land itself at the time a claim hereunder may be made by the Title Company.

14. Indemnitor represents and warrants that the following disclosures provided to the Title Company are complete and accurate:

A. Financial Statements.

Indemnitor acknowledges that Title Company is relying on the disclosures and shall hold harmless, protect, defend and indemnify the Title Company as to the accuracy thereof.

15. This Agreement shall benefit and bind the parties hereto and their respective successors, assigns and, in the case of individual Indemnitors, their heirs and personal representatives. This Agreement

בס״ד

may not be amended or modified without the written Endorsement thereof by Title Company and Indemnitor.

IN WITNESS WHEREOF, the undersigned has / have executed this Indemnity Agreement: Identified Risk effective this _____ day of _____, 20___.

Individual Signature Block:  *[signature]*

Indemnitor (in individual capacity):

_____

Print Name: _____Moses Bensusan_____

Entity Signature Block:  *[signature]*

Name of Entity:

_____Costa Hollywood Property Owner, LLC_____

Print Name: _____Moses Bensusan_____

Print Title: _____President_____

Individual and Entity Signature Block to be used when Indemnitor is executing in both individual and entity capacity.

בס״ד

## STG Indemnity Agreement: Identified Risk

**STG Indemnity Agreement: Identified Risk**

File, Commitment, GF, or Policy Number: Master Commitment, Costa Hollywood Project, 777 N. Ocean Drive, Unit __, Hollywood, FL 33019

(referred to herein as the "File")

This indemnification (hereafter "Indemnification" or "Agreement" or "Indemnity Agreement") is made and given by the undersigned, Moses Bensusan, individually, and on behalf of: Costa Hollywood Property Owner LLC referred to herein as "Indemnitor" (whether one or more) for the benefit of Stewart Title Guaranty Company and Greenberg Traurig, P.A. (individually and collectively referred to hereafter as "Title Company").

1. A. The Title Company has issued or will issue a commitment, binder or preliminary report with respect to the Land described per unit resold by Indemnitor as described in the recorded Declaration of Condominium as Instrument No. 114737550 and any amendments thereto in the Public Records of Broward County, FL (referred to hereafter as "Land").

An exception has been or will be made to the following matter:

Release of property under Schedule "A" herein from that certain Affidavit of Alexey Burya and the attached Security Agreement in Official Records Instrument 114388924, of the Public Records of Broward County, Florida.

(hereafter said matter, or any claim of said matter, or any action to enforce said matter, referred to as "Identified Risk").

B. Indemnitor has requested the issuance by Title Company from time to time before, on, or after the effective date of this Agreement, of a policy or policies of title insurance, endorsements, commitments, binders, preliminary reports, guarantees and indemnities ("Title Insurance Policy" or "Title Insurance Policies") covering all or part of the Land as to transactions, past, present and future, and insuring against loss which may be sustained by reason of the Identified Risk, claims due to the Identified Risk, or actions to enforce the Identified Risk, without showing (or insuring against) the Identified Risk as an exception to title, or insuring against loss by reason of any claim of priority of the Identified Risk over insured mortgages, deeds of trust or other insured interests, and/or insuring against liens arising from the Identified Risk, by endorsement or otherwise, including but not limited to legal fees and expenses (such insurance "Identified Risk Coverage"). Indemnitor understands and agrees that the Title Company may make disclosure of said claims, liens and actions to all proposed insureds.

2. To induce the Title Company to issue any Title Insurance Policy providing Identified Risk Coverage, Indemnitor shall hold harmless, protect, defend and indemnify the Title Company from and against any and all claims, costs, liabilities, losses, damages, expenses and charges (whether or not the Title Company has suffered actual loss), including, but not limited to, attorney's fees and expenses of

Exhibit B

בס״ד

litigation, and attorney's fees and expenses to enforce this Agreement, for which the Title Company may in its sole discretion become liable or sustain, arising out of or any way connected with any Title Insurance Policy providing Identified Risk Coverage. Any determination of coverage by the Title Company shall be conclusive evidence that the matter is within the Title Policy coverage as to the Identified Risk for the purposes of this Agreement.

3. Indemnitor understands and agrees that the Title Company's issuance of any Title Insurance Policy providing Identified Risk Coverage may make it necessary or appropriate for the Title Company, in its sole discretion and without notice to Indemnitor, to issue additional or other Title Insurance Policies providing Identified Risk Coverage covering all or part of the Land from time to time. Therefore, it is understood and agreed that the obligations of the Indemnitor hereunder shall not be limited to the Title Insurance Policy providing Identified Risk Coverage initially issued on the Land, but shall also apply to any Title Insurance Policies subsequently issued on the Land, or portions thereof. It is specifically understood by the Indemnitor that the Title Company will be relying upon this Agreement as a continuing guarantee of the performance of Indemnitor's obligations with respect to the Land in issuing any such further Title Insurance Policies providing Identified Risk Coverage. Indemnitor understands and agrees that the Indemnitor's obligations to the Title Company shall be enforceable in connection with the current or any future policies, whether or not the Title Company identifies the existence of the Identified Risk prior to issuance of any Title Insurance Policy providing Identified Risk Coverage.

4.A. In the event a Motion for Rehearing or Notice of Appeal is filed Case No. CACE-18-011130, Indemnitor shall immediately cease all closings and

(i) Cause a full release of the Identified Risk to be filed in the appropriate official records office; or

(ii) Cause to be recorded with respect to the Identified Risk a voluntary dismissal with prejudice; or

(iii) Take such action as shall be required by the Title Company, in its sole discretion.

B. Should Indemnitor fail to comply with subparagraphs (i), (ii) or (iii) as set forth above, the Title Company is authorized by Indemnitor, but is not obligated, to advance and pay such amounts as the Title Company shall, in its sole discretion, determine to be appropriate to procure release of such Identified Risk. Without notice or demand, the Title Company may take any action it deems appropriate for its protection or the protection of any of its insureds. Indemnitor agrees upon demand to reimburse the Title Company for all amounts advanced or expended, together with the maximum rate of interest allowable by law.

C. To the extent that the Title Company shall expend any sum of money on account of this Agreement, the Title Company shall also have the right of subrogation against the Indemnitor including but not limited to Indemnitor's rights in the Land. As an additional remedy, the Title Company shall have the right to a lien on the interest, if any, of Indemnitor in the Land for any sum of money paid or expended by the Title Company on account of this Agreement. This lien shall be subordinate in priority only to those liens of record in the county or parish where the Land is located at the time the Title Company records its statement of lien. The Title Company shall have the right to bid on the Land at a foreclosure sale and to acquire, hold, lease, mortgage and convey the same. A suit to recover a money judgment on any sums of money paid or expended by the Title Company on

account of this Agreement shall be maintainable without foreclosing or waiving the lien securing the same.

D. To the extent permitted by law, Indemnitor hereby subordinates any lien, claim, right or privilege that Indemnitor or those claiming by, through, or under Indemnitor, may have in the Land now or in the future for labor, equipment, material or services furnished or to be furnished for the benefit of the Land, to any mortgage, deed of trust, or other encumbrance of any insured under any title insurance policy issued by the Title Company, now or in the future.

E. The Indemnitor shall place the initial sum of $10,000 (ten thousand dollars and 00/100) in escrow with the Title Company and as each unit is closed and a title policy issued to secure the Indemnitor's obligation with respect to the Identified Risk, Indemnitor hereby agrees to deposit with the title company the sum of $1500.00 in escrow per unit.

F. Should Indemnitor fail or refuse to pay the Title Company any sums due to the Title Company hereunder after receiving demand the Title Company shall be entitled to reimburse itself from the Fund in an amount equal to any such sums, plus attorney's fees and expenses incurred in connection therewith to enforce this Agreement.

G. Upon dismissal of Case No. CACE-18-011130 with prejudice or the expiration of any applicable appellate period any sums held by the Company will be release to Costa Hollywood Property Owner LLC.

5. It is specifically understood and agreed by Indemnitor that once such title insurance obligations have been undertaken by the Title Company, no cancellation by Indemnitor can be effective.

6. Indemnitor understands that, as a continuing guarantee, as well as a direct indemnification, Indemnitor authorizes the Title Company without notice or demand, and without affecting the Indemnitor's liability hereunder, from time to time: (a) to renew, compromise, extend, accelerate or otherwise change the time or terms of payment of any obligation which shall be so guaranteed hereunder; (b) to take security for the payment of this Agreement and to exchange, enforce, waive and release any such security; (c) to apply such security and direct the order or manner of sale thereof as the Title Company may in its discretion determine; and (d) release or substitute any one or more of the Indemnitors (if more than one). In addition, Indemnitor waives any right to require the Title Company (a) to proceed against any person; (b) to proceed against or exhaust any security held by the Title Company or (c) to pursue any other remedy whatsoever. Indemnitor also waives all presentments, demands for performance, notices of non-performance, and notice of acceptance of this guarantee and indemnity. Indemnitor also waives any and all claims, counterclaims or defenses against the Title Company for recovery by the Title Company under this Agreement based upon any action or inaction of the Title Company or anyone else under this Agreement, the Title Policies or any other agreement between Indemnitor and the Title Company.

7. Indemnitor hereby agrees that the Title Company shall have and is granted the right, at any reasonable time, to examine the books, accounts, and records of Indemnitor, pertaining to such works or improvements.

8. In the event any provision of this Agreement shall be held invalid or unenforceable by any court having jurisdiction, such provision shall be deemed severable and shall not affect the validity of any other provisions or the balance hereof.

9. The failure of the Title Company from time to time to demand the performance of any act which it might require of Indemnitor hereunder or any other indemnitor shall not be construed as a waiver of the right to enforce such performance at a later time upon appropriate demand.

10. In the event of suit regarding any of the terms of this Agreement or performance or non-performance thereof, the parties agree that venue shall be in the appropriate courts in the county, parish, or state where the Land is located. The laws of the State of the site of the Land shall govern any suit. By signature hereto Indemnitor appoints the Clerk of said Court as the Indemnitor's agent to receive service of process and, further consents to jurisdiction of said Court over the Indemnitor.

11. Indemnitor understands and agrees that the Title Company is not obligated to issue any title insurance at any time, although requested to do so by Indemnitor, and may exercise its own discretion as to the issuance of any title insurance now or in the future. However, once the Title Company has issued title insurance, Indemnitor agrees that the issuance of title insurance will be in specific reliance upon this indemnification and guarantee given by the Indemnitor, and Indemnitor shall be obligated whether or not Indemnitor has specifically requested the issuance of title insurance.

12. All written notices permitted or required to be given under this Agreement may be delivered (by UPS, Federal Express or other similar means) to each of the parties thereto, or mailed to each party by Registered United States Mail or Certified United States Mail, and shall be considered duly made when addressed as follows:

To Title Company:

Stewart Title Guaranty Company
P.O. Box 2029
Houston, Texas 77252
Attention: Stewart Legal Services

with copy to:

Stewart Title Guaranty Company

1980 Post Oak Boulevard, Suite 710
Houston, Texas 77056
Attention: Stewart Legal Services

To Indemnitor(s):

_____

בס״ד

_____

_____

_____

Either party may, by written notice to the other, as aforesaid, change the address to which notices are to be sent.

13. A. The parties acknowledge that the Title Company may be asked to provide title insurance pursuant to this Agreement wherein legal title to the Land and improvements may be vested in a corporation, partnership, joint venture or other form of ownership other than individuals. It is the intention of the parties hereof that any person signing this Agreement individually and not in a representative capacity shall be unconditionally and personally bound by the terms hereof with full personal recourse against such individual.

B. Where any one or more of Indemnitors are corporations, partnerships, limited liability companies or joint ventures, the officer signing on behalf of such entity personally represents and warrants that he/she has been duly authorized by such entity to execute this Agreement on behalf of such entity.

C. The obligations hereunder are joint and several and unconditional and shall continue whether or not the undersigned has any interest in the entity which presently owns the Land or in the Land itself at the time a claim hereunder may be made by the Title Company.

14. Indemnitor represents and warrants that the following disclosures provided to the Title Company are complete and accurate:

A. Financial Statements.

Indemnitor acknowledges that Title Company is relying on the disclosures and shall hold harmless, protect, defend and indemnify the Title Company as to the accuracy thereof.

15. This Agreement shall benefit and bind the parties hereto and their respective successors, assigns and, in the case of individual Indemnitors, their heirs and personal representatives. This Agreement may not be amended or modified without the written Endorsement thereof by Title Company and Indemnitor.

IN WITNESS WHEREOF, the undersigned has / have executed this Indemnity Agreement: Identified Risk effective this _____ day of _____, 20___.

בס״ד

Individual Signature Block:

Indemnitor (in individual capacity):

_____

Print Name: Moses Bensusan

Entity Signature Block:

Name of Entity:

Costa Hollywood Property Owner LLC

_____

Print Name: Moses Bensusan

Print Title: President/Manager

Individual and Entity Signature Block to be used when Indemnitor is executing in both individual and entity capacity.